# BURBANK GARAGE v. U. S. FIDELITY & GUARANTY CO. et al.

No. 19543. Opinion Filed July 8, 1930.

A. P. Carr, for plaintiff in error.

S. T. Carman, Asst. Co. Atty., and Hargis & Yarbrough, for defendants in error.

HALL, C. This action was commenced by the Burbank Garage, a domestic corporation, against one Ed Peterson and the United States Fidelity & Guaranty Company, to recover for certain labor and material alleged to have been furnished to Peterson in the construction of certain public works, to wit, bridges in Osage county.

The defendant Peterson had obtained contracts from the county commissioners to construct these bridges. The bonds required under sections 7486 and 7487, Comp. Stat. 1921, were executed by the defendant Peterson, and United States Fidelity & Guaranty Company as surety. The principal officer of the plaintiff, the Burbank Garage, was one W. S. Prosser. The defendant, the contractor Peterson, it seems was financially unable to properly prosecute this work of constructing the bridges, and Prosser and Peterson entered into a partnership apparently on an equal share basis. Plaintiff's testimony shows that in furtherance of this partnership Prosser and Peterson went to Tulsa, and Prosser arranged for the purchase of a truck to be used on the joint enterprise. It appears that $1,900 of the first warrant which they received in payment of the construction work was used to pay for this truck. This warrant was deposited to the credit of Ed Peterson, with the understanding that the plaintiff Prosser had the privilege of checking on it, and did check on it for groceries and supplies, and whatever was necessary for carrying on the work of building the bridges. Other warrants were turned to Peterson and some to Prosser. The warrants which were delivered to Prosser were by him deposited to the credit of the Burbank Garage. It appears that all or a greater portion of these amounts which were turned to Prosser, or the Burbank Garage, were used in the prosecution of the work of constructing the bridges.

It also appears that after a portion of this money was paid out to the laborers who performed work on these bridges or enterprises, the Burbank Garage took assignments for this labor and material. This action is founded upon these assignments, as well as upon labor and material furnished by Prosser in the construction of these bridges, for which he was not paid. He was to be paid in the same manner in which Peterson was to be paid, by receiving one-half of the profits, if any.

The court sustained a demurrer to plaintiff's testimony, and rendered judgment for the defendants. He doubtless sustained the demurrer upon the ground that there was clearly established a partnership between Prosser and the defendant Peterson; that there had been no accounting, either a judicial accounting in equity or an individual accounting between these two parties, and that neither Prosser nor the trade name under which he was operating could maintain an action at law against the defendant Peterson, or the defendant United States Fidelity & Guaranty Company, and that the Burbank Garage had no interest whatever in the transaction; that the relation between Prosser (the owner of the Burbank Garage) and the defendant Peterson was that of an ordinary partnership, and not that of debtor and creditor. The evidence clearly shows that fact. Such a state of facts was clearly established by plaintiff's own testimony, and there is no other fact or circumstance tending to vary it. Prosser obtained assignments from laborers performing work on the bridges, public improvements, and obtained these assignments after he had paid the parties in the usual way of paying them for their services. He had these assignments made to the Burbank Garage. That procedure did not give the Burbank Garage any greater rights than could have been claimed by Prosser; and under the law here as well as elsewhere, he had no enforceable rights in a court of law until there had been an accounting, unless an accounting had been rendered useless between himself and Peter-

son. That rule was definitely settled in this state in the case of Dill v. Flesher, 73 Okla. 185, 175 Pac. 359.

It is a general rule that "one partner cannot maintain an action at law against another to recover an amount claimed by him by reason of partnership transactions until there has been a final settlement of the affairs of the partnership by discharging its liabilities, collecting its assets, and definitely ascertaining the surplus to a share of which he is entitled. Until this is done, a partner's only remedy is to apply to a court of equity for a dissolution and accounting and ascertainment of such balance. But where the debts of a partnership have been paid, its property distributed, and its accounts closed, an action may be maintained by one partner against another to recover his part of the profits arising from a venture not involved in the partnership accounting, and it is not necessary for him to apply to a court of equity for an additional accounting between the parties."

20 Ruling Case Law, p. 924, sec. 139, summarizes the rule in the following language:

"It is a general rule that so long as a partnership continues, one partner cannot maintain an action at law against the firm, or against his copartner on account of a matter connected with the partnership. This disability continues until there is a settlement of the accounts and a balance struck, and persists until these events transpire, although there has been a dissolution of the partnership."

The exceptions to the rule are stated in section 140, at p. 926, of the same work, and among the exceptions it is thus stated that—

"It may also be noted that the general rule that there must be an accounting before the right of contribution can be enforced does not seem to be inexorable, and if the equivalent of a judicial accounting has been had or an accounting is otherwise rendered useless, a suit may be maintained without it."

The facts in the present case do not bring it within any one of the exceptions to the general rule that one partner cannot maintain an action at law against the firm or against his copartner on account of a matter connected with the partnership so long as the partnership continues. Furthermore, the bond executed by the defendant, United States Fidelity & Guaranty Company, was not for the protection of the principal, Peterson, or his partner, Prosser, but it was to protect others against the delinquencies of these persons—Peterson or the partnership in the enterprise covered by the bond. This being true, no action at all would lie in favor of Prosser (the real party in interest)

against the United States Fidelity & Guaranty Company.

The question presented to the trial court in this case was purely one of law, and he decided it correctly. The judgment of the court is therefore affirmed.

BENNETT, HERR, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.