E. E. LAND, Plaintiff in Error,

v.

H. G. LYNN, Defendant in Error.
No. 37887.

Supreme Court of Oklahoma.
July 29, 1958.
Rehearing Denied Nov. 12, 1958.

Reuel W. Little, Madill, for plaintiff in error.

Welch & Dudley, Madill, for defendant in error.

JOHNSON, Justice.

This is an action brought by E. E. Land against United Builders Incorporated, a corporation, H. G. Lynn and Odes Harwood to recover on a promissory note. The note was executed on March 24, 1954, in the sum of $5,000, together with interest and attorney fees and was executed by defendant, United Builders Incorporated, and endorsed by defendants H. G. Lynn and Odes Harwood. The note was made payable on the 10th day of May, 1954.

Defendant, United Builders Incorporated, and Odes Harwood filed no answer in the case and made no appearance at the trial, and judgment by default was entered against them by the court.

Defendant H. G. Lynn filed an answer consisting of a general denial and the following affirmative plea:

"Further answering, this defendant alleges and states that the note de-

scribed in plaintiff's petition was not an obligation to pay, but was only a written assurance to the plaintiff, herein, who resided outside the continental limits of the United States, that such sum of money would be paid him out of the profits which might be earned by the defendant, the United Builders Incorporated, a corporation, only if and when such corporation did earn any profit; that no profit was earned by said corporation and, therefore, the note has never become due and payable; * * *".

After plaintiff's demurrer to the separate answer of Lynn was overruled and exceptions allowed, plaintiff filed a reply consisting of a general and special denial.

For about a year prior to the time the above note was executed, defendants Lynn and Harwood and Clarence Wynne, who is not a party to the action, had numerous discussions relative to the feasibility of acquiring a tract of land near Oakland, which is located near the boundary line of Madill in Marshall County, Oklahoma, for the purpose of instigating a housing development plan upon such tract. The plan, however, was never consummated by them. They then agreed to contact Mr. Land and attempt to interest him in the project. Mr. Wynne and defendant Harwood got in touch with Land, brought him to Madill and introduced him to defendant Lynn, and after explaining to him the project sought to be consummated, defendants Lynn and Harwood and plaintiff Land went to Oakland to see the tract sought to be acquired, and after viewing the tract and making some further investigation as to the feasibility of the plan plaintiff concluded that the plan was feasible and that some profit could be made out of the project. He thereafter agreed to join Lynn, Harwood and Wynne in the consummation thereof. The parties thereafter returned to Madill, Oklahoma, and met at Jack's Cafe, which is owned by Wynne, and there agreed to and formed a corporation to be known as United Builders Incorporated. Lynn was made president of the corporation, Land vice-president and Harwood secretary and treasurer.

At that meeting it was agreed that the profits derived from the project should be divided equally among the above mentioned parties.

Wynne was then employed by the corporation as a salesman and to assist defendant Harwood in making arrangements to finance the project and was to be paid for his services the sum of $300 per month.

The evidence further shows that after some discussion it was decided that the sum of $5,000 would be necessary to start work on the project until it could be further financed. Land then agreed to advance said sum, and a note was then drafted and executed by the corporation and endorsed by Lynn and Harwood. This note was made payable July 1, 1954. It was, however, later discovered that the $5,000 advanced would not be sufficient to continue work on the project until it could be further financed. Land then agreed to advance an additional $5,000 for which a note was also given by the corporation and endorsed by Lynn and Harwood. This note is dated the same day the note above mentioned was dated but was made payable May 10, 1954, and is the note sued upon. Since, however, the note first above mentioned is not sued upon and since no demand has ever been made for its payment by Land, we shall not further discuss that note.

After the above notes were executed, Land, who was then a resident of Venezuela, South America, left for home, and the management of the corporation was left in the hands of Lynn and Harwood.

The tract was thereafter acquired for the sum of $2,000 and was paid out of the funds advanced by Land. It was thereafter surveyed and platted and other work done on the tract preparatory to the construction of houses thereon.

It was the intention of the corporation to build thirty-nine houses on the tract, but the corporation was unable to finance the deal and the project ended in failure. Land

then brought suit on the note above mentioned.

Lynn testified that at the time the note was executed by the corporation and endorsed by him it was agreed by and between him and Mr. Land that he should not become personally liable as an endorser on the note, but that the note should be paid only out of the profits of the corporation, and with that understanding the note was endorsed by him. His evidence in this respect is corroborated by Mr. Wynne. The above evidence of Lynn and the witness Wynne was admitted in evidence over the objection and exceptions of plaintiff based on the ground that it tended to vary, contradict and impeach the terms of the note.

Land, however, in his evidence denies that such agreement ever existed between him and Lynn; that the note was executed for the purpose of reimbursing him for the sum advanced; that there were no conditions as to the execution, endorsement and delivery of the note.

At the close of the evidence both parties moved for a directed verdict. The motions were overruled, and the cause was submitted to the jury.

The court in its instructions to the jury, in instruction number nine, told the jury:

"Should you find from a preponderance of the evidence and under these instructions that the instrument and note involved in this cause of action was delivered to the plaintiff and that said delivery was a conditional and contingent delivery and was not to be an absolute obligation until the happening of an event, that is, until there was money in the hands of the corporate defendant with which to pay the same, then your verdict should be for the defendant, H. G. Lynn; but if you do not so find your verdict shall be for the plaintiff."

This instruction is excepted to by plaintiff.

The jury returned a verdict in favor of defendant. Plaintiff's motion for new trial was overruled, and judgment was entered on the verdict.

Plaintiff appeals and assigns numerous errors, but in his brief says all the assignments will be considered in one proposition, to-wit:

"The note, unambiguous, given for a valuable consideration, actually delivered, became operative and was not conditionally delivered."

Plaintiff under this assignment argues that the note sued on was plain and unambiguous in its terms and time of payment, and that the above evidence of defendant Lynn and Mr. Wynne was inadmissible for the reason that it tends to vary, contradict and impeach the note, and that the court erred in admitting such evidence over his objection and exception, and further argues that even though it was admissible it fails to show a conditional delivery of the note, and the court should have sustained his motion for a directed verdict. These contentions will be considered together.

Plaintiff in support of his contentions cites, among other cases, Farmers' Bank of Roff v. Nichols, 25 Okl. 547, 106 P. 834, and Posey v. Citizens' State Bank, 93 Okl. 266, 220 P. 628.

In the case first above cited this court held:

"A negotiable promissory note was executed in payment of the premium on some life insurance policies. At the time of the delivery of the note to payee, who was agent for the insurance company, the payee executed a written agreement that if the maker of the note, within a stipulated time, investigated the company and found it not satisfactory or as represented, the note or the amount thereof in cash would be refunded to the maker by the payee. Held, that the contemporaneous agreement did not constitute the delivery of the note a conditional delivery or deny to the payee the right to transfer the same, and that one who purchased the note in due course of

business, before maturity, for a valuable consideration, could recover in an action thereon, although at the time of the transfer he had notice of the contemporaneous agreement."

In Posey v. Citizens' State Bank, supra, it is held:

"Oral evidence is not admissible to show that a note, absolute in its terms, is payable only out of a particular fund."

In that case it appears that the bank brought suit on a note executed by Posey for the purchase price of certain stock in State Rural Credit Association. Posey at the time had subscribed for certain shares of stock in the corporation. He failed to pay the note, and suit was brought on the note. In defense of the note Posey offered to prove that it was agreed between him and the bank and an agent of the Credit Association that the note should not be paid until the Association became a going concern, and it then should be paid from the proceeds of a loan he was to receive from the Association. This evidence was excluded by the court on the ground that it tended to vary and contradict the terms of the note and the stock purchase agreement. Judgment was then entered in favor of plaintiff. Defendant appealed. This court on appeal held the evidence inadmissible and affirmed the judgment.

We have examined the other Oklahoma cases cited by plaintiff and conclude that they are not applicable here.

Plaintiff cites cases from other jurisdictions which we think support his contention. In Index Shale Oil Co. v. Wheeler, 81 Colo. 402, 255 P. 982, the Supreme Court of Colorado held that in a suit upon a note given for the purchase price of a certain interest in business evidence that the note should be paid only out of the first profits from the operation of the business was inadmissible.

In Faris v. Beck, 74 Colo. 480, 222 P. 652, the same court held that a purchaser of corporate stock who had given his note for the purchase price thereof cannot show an oral agreement that he was not to be held upon the note but that it was to be paid out of the dividends derived from the stock for the reason that such evidence tends to vary and contradict the terms of the note.

In Mantz v. Fischer, 51 N.D. 685, 200 N.W. 795, the Supreme Court of North Dakota held that in an action brought by the payee against the maker of promissory notes for the purchase price of a threshing machine, parol evidence that the notes were to be paid only from the net earnings of the threshing machine outfit was inadmissible as varying the terms of the notes.

In Mechanics' Sav. Bank v. Gish, 200 Iowa 463, 203 N.W. 687, the Supreme Court of Iowa held evidence that the maker of promissory notes in payment of stock in a corporation was induced to deliver the notes in question upon condition that they were to be paid out of the earnings of the corporation is incompetent as clearly violating the parol evidence rule.

On the other hand, it has frequently been held that parol evidence is admissible to show as between the parties to a promissory note that the note was delivered upon condition and should not become a binding contract between the parties until the performance of such condition. Adams v. Thurmond, 48 Okl. 189, 149 P. 1141, and cases cited therein. Our statute on negotiable instruments, 48 O.S.1951 Sec. 36, so provides.

Defendant relies largely on the case of Buellesfeld v. Carpenter, 191 Okl. 301, 129 P.2d 1022. In that case we held:

"Where the maker of a note delivers it to the payee with the agreement that it shall not take effect until the happening of a contingency or the performance of a certain condition, and where neither the contingency has occurred nor the condition been performed, the note never becomes operative as between the original parties."

In that case suit was brought by F. J. Buellesfeld against A. B. Carpenter and another to recover on a promissory note. At the trial of the case it appeared that

on and prior to the death of one Dr. Buellesfeld he and plaintiff in that case were indebted to a bank on two notes aggregating the sum of $6,000. After the death of the doctor, plaintiff in that case, Helen Carpenter, and widow of deceased executed a note payable to the bank in the sum of $6,000 to take the place of the two notes above mentioned. Thereafter the bank brought suit on said note against plaintiff and Helen Carpenter. Plaintiff then paid the note and A. B. Carpenter, defendant in the action, and Helen Carpenter executed to him a note for said sum. Defendant in the action on the note was permitted to testify, over and against the objection and exception of plaintiff, that the note in question was executed and delivered to plaintiff under the express consideration, understanding and agreement that it should not be a binding and valid obligation against them unless and until the estate of Dr. Buellesfeld should show a net value of $6,200. The evidence showed that the estate had not reached that value. The jury under this evidence returned a verdict in favor of defendant. Judgment was then entered on the verdict, and this court on appeal held the above evidence admissible and affirmed the judgment.

We do not think that case controlling here. In that case the evidence showed a conditional delivery of the note. It was not to become a valid and binding obligation until and unless the net value of Dr. Buellesfeld's estate should reach $6,200. In this case the evidence fails to show a conditional delivery of the note. It simply shows that at the time the note was endorsed and delivered it was agreed by the payee and the endorser Lynn that he, Lynn, should not be held personally liable on his endorsement, and that the note should be paid out of the profits of the corporation. Therein lies the distinction between that case and the case at bar. This distinction is pointed out in the above case.

We conclude the trial court committed error in overruling plaintiff's objection to the admission of the challenged evidence and should have sustained plaintiff's motion for directed verdict.

Judgment reversed and the cause remanded with directions to enter judgment in favor of plaintiff.

HALLEY, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

WELCH, C. J., and CORN, V. C. J., dissent.